UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


NIKOLLE NIKOLLAJ,

    Plaintiff,                                 CIVIL ACTION NO. 14-13260

  v.

                                   DISTRICT JUDGE JOHN CORBETT O'MEARA
                                   MAGISTRATE JUDGE  CHARLES E. BINDER

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.
_____/


**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.    RECOMMENDATION**

     **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment should be **DENIED**, and that of Defendant **GRANTED**, as there is substantial evidence on the record that claimant regained the residual functional capacity for a limited range of light work prior to September 30, 2007, when his insured status expired.

**II.    REPORT**

    **A.    Introduction and Procedural History**

    Plaintiff filed an application for Social Security disability income benefits on May 17, 2008, alleging that he had been disabled and unable to work since November 5, 2005, at age 47, due to congestive heart failure, degenerative disc disease of the spine, left shoulder and

arm pain, carpal tunnel syndrome of the left hand and emotional difficulties [1] . A requested de novo hearing was held on August 7, 2012, before Administrative Law Judge (ALJ) Michael Wilenkin. The ALJ subsequently found that the claimant was not entitled to disability benefits because he retained the ability to perform a limited range of light work between November 5, 2005, the date he was previously found to have regained the residual functional capacity to perform light work activity, and September 30, 2007, when his insured status expired. The Law Judge restricted claimant to jobs that did not expose him to vibrating tools, hazardous heights or dangerous machinery. He was further limited to simple, routine and repetitive tasks due to a moderate inability to maintain attention and concentration for extended periods. Claimant could not bend forward or sit, stand or walk for prolonged periods (TR 907-914) . The Appeals Council declined to review that decision and Plaintiff commenced the instant action for judicial review of the denial of benefits. The

---

[1] Plaintiff filed prior applications for DIB in October 1999, and September 2002, alleging the same disability as the present application. In a decision dated May 25, 2006, ALJ Ethel Revels found that the claimant was disabled beginning on August 8, 2002, through November 4, 2005, when he was found to have regained the residual functional capacity to perform a significant number of jobs (TR 904). The decision was affirmed by the Appeals Council, and the claimant sought judicial review of the partially favorable decision to grant a closed period of disability benefits. The United States District Court for the Eastern District of Michigan remanded the action on May 27, 2009, for additional administrative action to include a summary of evidence found in the record relating to medical improvement and the ability to work (TR 905). Unfortunately, no administrative action was taken by the SSA in this case until February 2012 (TR 904).

parties have filed Motions for Summary Judgment and the issue for review is whether Defendant's denial of disability benefits between November 2005, and September 30, 2007, was supported by substantial evidence on the record.

Claimant was 50 years old at the time his insured status expired in September, 2007 (TR 912). He had a 9th grade education in his native Kosovo, and had been employed as a machine repair and maintenance man during the relevant past (TR 752-753, 1714-1715). These jobs were classified as heavy and skilled activity under the Social Security regulations (TR 781). Plaintiff stopped working in July 1998, when the factory where he worked went out of business (TR 1715). Plaintiff testified that he was totally disabled due to severe back, left shoulder, left arm and left hand pain (TR 1721). He asserted that he also suffers from congestive heart failure (TR 1724). As a result of his poor health, claimant stated that he experienced periodic depression during the relevant period[2] (TR 1726).

A Vocational Expert (VE) was not called by ALJ Wilenkin at the remanded hearing held on August 7, 2012 (TR 904, 1686). Judge Wilenkin instead relied on the testimony of Ms. Castellana, a VE who had testified at an earlier hearing held before ALJ Revels in

---

[2]While awaiting the federal district's court's remand order, the claimant filed a third application for disability benefits. Benefits were denied following an administrative hearing before ALJ Henry Perez in October 2010. Plaintiff fails to demonstrate that the case should be remanded once again because the June 2010, hearing testimony was not before ALJ Wilenkin. (See Plaintiff's Motion for Summary Judgment at page 25). A party challenging an administrative decision cannot obtain remand without bearing his burden of establishing that any error was prejudicial. Shinseki v. Sanders, 556 U.S. 396, 409 (2009). Plaintiff does not even attempt to explain how he likely would have been granted benefits if ALJ Wilenkin had reviewed the June 2010 hearing testimony.

November 2005. Ms. Castellana had previously opined that there would not have been any jobs for claimant to perform during the relevant period if his testimony were fully accepted (TR 318). If he were capable of light work, there were numerous unskilled assembly, inspection, packaging, and surveillance monitoring jobs that he could still have performed prior to September 2007. These jobs would not expose claimant to vibrating tools, hazardous heights or dangerous machinery. He would not have to sit or stand for longer than 45 minutes. Given claimant's moderate inability to maintain attention and concentration for extended periods, these jobs involved the performance of simple, routine and repetitive tasks (TR 317-318).

### B. ALJ's Findings

The Administrative Law Judge found that Plaintiff was impaired prior to September 30, 2007, as a result of a history of cardiomyopathy with episodes of congestive heart failure, degenerative disc disease of the cervical and lumbar spine, left shoulder and arm pain, carpal tunnel syndrome of the left hand and obesity, but that he did not have an impairment or combination of impairments severe enough to meet or equal the Listing of Impairments. The ALJ recognized that claimant's multiple medical problems during the relevant period prevented him from working at jobs requiring prolonged periods of sitting, walking or standing. He also could not be exposed to vibrating tools, repetitive forward flexion, hazardous heights or dangerous machinery. Given his moderate inability to maintain attention and concentration for extended periods of time because of pain, the ALJ further

limited him to simple, routine and repetitive tasks. Nevertheless, the ALJ found that Plaintiff had regained the residual functional capacity, prior to September 30, 2007, to perform a significant number of light jobs, within those limitations, as identified by the Vocational Expert.

### C. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this court has jurisdiction to review the Commissioner's decisions. Judicial review of those decisions is limited to determining whether her findings are supported by substantial evidence and whether she employed the proper legal standards. Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantial evidence is more than a scintilla but less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See Kirk v. Secretary, 667 F.2d 524, 535 (6th Cir. 1981), cert. denied, 461 U.S. 957 (1983). This court does not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. See Brainard v. Secretary, 889 F.2d 679, 681 (6th Cir. 1989); Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. Kirk, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if even substantial evidence also supports the opposite conclusion, Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986) (en banc), Casey v. Secretary, 987 F.2d 1230 (6th Cir. 1993), and even if the reviewing court

would decide the matter differently, Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

Plaintiff maintains that substantial evidence does not support a finding that he regained the residual functional capacity to perform a limited range of light work activity prior to September 30, 2007. He also argues that the ALJ improperly discounted the disability opinion from his treating doctors. Defendant counters that the claimant regained the residual functional capacity for a reduced range of light work because the objective clinical evidence of record, prior to September 2007, does not confirm the disabling nature of his multiple impairments.

### D. Insured Status Requirements for Disability Benefits

A "period of disability" can only commence while an applicant is fully insured. 42 U.S.C. § 416(I)(2). The parties agree that the Plaintiff's insured status for purposes of receiving DIB benefits expired on September 30, 2007, and thus he cannot be found disabled unless he can establish a disability prior to that date. Gibson v. Secretary, 678 F.2d 653, 654 (6th Cir. 1982). Evidence relating to a later time period is only minimally probative, Siterlet v. Secretary, 823 F.2d 918, 920 (6th Cir. 1986), and is only considered to the extent it illuminates claimant's health before the expiration of insured status. Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988). In other words, regardless of the seriousness of his present disability, Plaintiff must prove that he was disabled between November 5, 2005, the date he was previously found to have regained the residual functional capacity to perform substantial

gainful activity, and September 30, 2007, when his insured status expired , in order to be entitled to DIB benefits. Garner v. Heckler, 745 F.2d 383, 390 (6th Cir. 1984).

### E. Discussion and Analysis

After review of the record, I suggest that there is substantial evidence on the record supporting the Commissioner's conclusion that Plaintiff regained the residual functional capacity for a restricted range of light work prior to September 30, 2007. The medical evidence, as a whole, fails to provide objective support for Plaintiff's allegations of severe and totally disabling functional limitations stemming from his heart condition, joint pain or periodic depression[3].

A review of the medical evidence of record between November 2005, and September 2007, demonstrates that claimant's cardiac condition showed significant improvement. For instance, an August 2002, echocardiogram had indicated that Plaintiff suffered from severe left ventricle dysfunction with an estimated ejection fraction of 25 percent. Another echocardiogram, performed in February 2006, showed significant improvement with an ejection fraction of 72 percent, and only mild pulmonary insufficiency (TR 1578).

---

[3]The ALJ recognized Plaintiff's allegations of depression, but deemed the condition not severe because "[t]he record does not contain evidence that the claimant's depression limited his activities of daily living, his social functioning, or his concentration, persistence, or pace" (TR. 907). Significantly, claimant does not challenge that conclusion. In any event, Sixth Circuit rulings make clear an ALJ is not required to assess depression-related limitations in the absence of any acceptable medical opinion to that effect. See Long v. Apfel, 1 Fed. App'x 326, 333 (6th Cir. 2001).

Claimant presented to the emergency room in January 2008 with complaints of chest pain. A cardiac catheterization showed only mild coronary artery disease. Other tests conducted at that time showed normal left ventricle functioning, and a mildly dilated aorta with no signs of an aneurysm or dissection (TR 1249). Examining physicians also noted that claimant's hypertension was controlled with medications (TR 1255). At the time of his hospital discharge, Plaintiff was diagnosed with mild coronary disease (TR 1252). That diagnosis was confirmed eleven months later, in December 2008, when a cardiac test revealed that the claimant had an ejection fraction estimated at 50 to 55 percent, which was said to be within the range of normal functioning (TR 1219). In sum, Plaintiff enjoyed significant medical improvement (with only mild cardiac limitation) within months of the expiration of insured status.

While the claimant's cardiac health showed improvement, he still suffered from degenerative disc disease of his cervical and lumbar spine. As noted by the ALJ, however, the claimant failed to even mention his back and neck pain during several hospitalizations and office visits prior to September 2007 (TR 911). The fact that Plaintiff did not complain of joint pain at these times is at odds with his current assertion that he suffered disabling neck and back pain prior during the relevant period.

When evaluating Plaintiff's residual physical functional capacity, the Law Judge took into consideration the opinion of a state agency consultant[4], who concluded that the claimant

---

[4] Under the regulations, ALJs "must consider findings of State agency medical and psychological consultants," but ALJs "are not bound by any findings made by State agency medical or psychological

regained the ability to perform unskilled work prior to September 2007 (TR 1140-1147). In light of that evidence, the Commissioner could reasonably conclude that Plaintiff's subjective complaints of persistent, severe, totally disabling symptoms stemming from his joint pain were not fully credible.

Nor is there objective medical evidence suggesting that claimant suffered severe side effects from pain medications, or that he needed to rest frequently throughout the day during the relevant period. The ALJ also took into consideration claimant's objectively proven functional limitations by restricting him to simple, routine jobs that limited prolonged standing or extensive walking. The Law Judge also restricted claimant from jobs that required repetitive forward flexion of the trunk or frequent neck movement (TR 908).

Plaintiff relies heavily upon the fact that Drs. Maurice Belkin and Verthal Kinhal both indicated that he was disabled as a result of the severe nature of his back pain and cardiac condition (TR 1295). It is well settled that opinions of treating physicians should be given greater weight than those of one-time examining doctors retained by the government. Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980). However, the opinion of a treating physician is entitled to deference only if his clinical findings are uncontradicted by substantial medical or other evidence, and if the opinion is based on detailed, clinical, diagnostic evidence. Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985). Since Drs. Belkin and Kinhal offered

---

consultants." 20 C.F.R. § 404.1527(f)(2)(I) (2015).

little objective evidence during the relevant period to support their statement of disability[5], their respective opinions need not have been given any special weight . Miller v. Secretary, 843 F.2d 221, 224 (6th Cir. 1988). Under these circumstances, the totality of the evidence must be considered. Landsaw v. Secretary, 803 F.2d 211, 213 (6th Cir. 1986).

It is the rare case, indeed the exception, in which every piece of evidence points incontrovertibly toward a decision to deny benefits. There was evidence in the record which, taken in isolation, might suggest that the Plaintiff was totally disabled and that her testimony was fully credible. However, special deference is owed to the credibility findings of the ALJ, who was the only one who had the opportunity to observe the demeanor of the witness, evaluate what was said and how it was said, and to consider how that testimony fit in with the rest of the medical evidence. Such observation is invaluable and should not be discarded lightly. Beavers v. Secretary, 577 F.2d 383 (6th Cir. 1978). See also Williamson v. Secretary, 796 F.2d 146, 150 (6th Cir. 1986).

By establishing that he could not return to his past relevant work, the Plaintiff here effectively shifted to the Commissioner the burden of proving that he had the vocational

---

[5] The ALJ rejected the disability statements, setting forth persuasive reasons for doing so (TR 911). The ALJ expressed concern about the lack of medical documentation to support their opinion during the relevant period. As the ALJ noted, both doctors's statements were submitted two years after the claimant's date of last insured. Moreover, the ALJ took into consideration Plaintiff's acknowledgment that he remained capable of driving, going for walks, and visiting relatives prior to September 2007. The ALJ reasonably found that Plaintiff's admitted activities contradicted the treating physicians' conclusion that he was unable to perform any amount of work during the relevant period. This suggested to the ALJ that the disability statements were prepared for the sole purpose of helping the claimant qualify for benefits.

qualifications to perform alternative jobs in the economy during the relevant period, notwithstanding his various impairment. The Commissioner, however, met her burden of proving the existence of jobs which accommodated claimant's known restrictions. In response to a hypothetical question that took into consideration claimant's educational and vocational background, along with claimant's significant impairments, the Vocational Expert testified that there were numerous unskilled assembly, inspection, packaging, and surveillance monitoring jobs that he could still have performed[6]. These jobs would not expose claimant to vibrating tools, hazardous heights or dangerous machinery. He would not have to sit or stand for longer than 45 minutes. Given claimant's moderate inability to maintain attention and concentration for extended periods, these jobs involved the performance of simple, routine and repetitive tasks (TR 317-318). For all these reasons, I am persuaded that substantial evidence supports the finding that Plaintiff retained the residual functional capacity for a restricted range of light work activity[7] prior to September 2007 .

---

[6]A vocational expert in November 2005, testified that Plaintiff could perform the occupations of assembler, inspector/checker, and packager, which collectively represented 3,000 jobs at the light level in southeastern Michigan (TR. 913). Even though ALJ chose not to call another vocational expert during the August 2012 remand hearing, the Sixth Circuit has consistently held that only a few hundred jobs total in a local area constitutes "significant numbers" for purposes demonstrating that jobs existed for claimant to perform. Anderson v. Comm'r of Social Security, 406 F. App'x 32, 35 (6th Cir. 2010). Plaintiff has provided no reason to believe that the number of jobs existing in September 2007, when insured status expired, decreased by an unprecedented and catastrophic eighty percent or more during the less than two year period in November 2005, when the VE identified those jobs. Plaintiff has not demonstrated entitlement to remand on this issue because he has not shown any reason to believe that a remand might lead to a different result.

[7]The Medical-Vocational Guidelines provide that a person who is limited to light work is not disabled unless he is "illiterate or unable to communicate in English." See §§ 202.09 -202.15. The issue of whether such a person has skills that transfer to other work is irrelevant to that determination, and Plaintiff does not challenge the ALJ's finding that he is able to communicate in English (TR. 912). Nor, does he argue that he is illiterate.

In sum, the Commissioner's decision to deny benefits was within the range of discretion allowed by law and I find that there is simply insufficient evidence to find otherwise. Accordingly, Plaintiff's Motion for Summary Judgment should be denied, that of Defendant granted and the instant Complaint dismissed.

### III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. United States v. Walters, 638 F.2d 947 (6th Cir. 1981), Thomas v. Arn, 474 U.S. 140 (1985), Howard v. Secretary of HHS, 932 F.2d 505 (6th Cir. 1991). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987), Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991). Pursuant to Rule 72.1 (d)(2) of the Local Rules of the United States District Court for the Eastern District of Michigan, a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                 s/ *Charles E. Binder*
                 CHARLES E. BINDER
Dated: June 30, 2015         United States Magistrate Judge